## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE MIDWEST TRUST COMPANY | ) | |
| OF MISSOURI, Conservator of MLM, | ) | |
| a minor, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Case No. 06-2411-EFM |
| | ) | |
| LISA GARD, M.D., | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM AND ORDER

Plaintiff filed this medical malpractice claim against Dr. Lisa Gard, claiming that earlier diagnosis of a developing neurological event and referral of the minor patient to a speciality hospital would have prevented or reduced the resulting permanent neurological damage.  The matter was tried to a jury over seven days.  Following two and a half days of deliberations, on March 13, 2009, the jury rendered a verdict in favor of the plaintiff in the amount of $12,100,000[1].  The matter now comes before the Court on defendant's motion for a new trial (Doc. 235).  For the reasons set forth below, the motion is denied.

## **Standard of Review**

Plaintiff has moved for a new trial pursuant to Fed. R. Civ. P. 59.  Motions for a new trial are committed to the sound discretion of the trial court.[2]  They are "not regarded with favor and

---

[1]The Court modified the judgment to $12,050,000 to conform to the Kansas law capping awards for non-economic loss at $250,000.

[2]*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984); *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

should only be granted with great caution."[3]  In reviewing a motion for a new trial, the court must

view the evidence in the light most favorable to the prevailing party.[4]  A new trial based upon an

error of law is unwarranted unless that error affected the substantial rights of the parties.[5]  The party

seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or

that the verdict is not based on substantial evidence."[6] The court should "ignore errors that do not

affect the essential fairness of the trial."[7]

## Discussion

### A.    The *Allen* Charge

Defendant's first grounds for seeking a new trial are that it was prejudicial error for the Court

to give the jury a modified *Allen*[8] instruction.  Following approximately 10 hours of deliberation,

the jury submitted the following question to the Court: "Can you give us some guidance if the eight

of us cannot come to agreement?"[9]  The Court conferred with counsel about responding to the

question with a modified *Allen* instruction.  Defendant's counsel opposed giving the instruction

because he believed that the jury had indicated that it could not come to a decision,[10] and the Court

---

[3]*United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).

[4]*Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993); *Escue v. Northern Okla. College*, 450 F.3d 1146, 1156 (10th Cir. 2006).

[5]*Heyen v. United States*, 731 F. Supp. 1488, 1489 (D. Kan. 1990), aff'd, 945 F.2d 359 (10th Cir. 1991).

[6]*White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

[7]*McDonough Power Equip.*, 464 U.S. at 553.

[8]The supplemental jury instruction given when a jury cannot reach a verdict is commonly called an *Allen* charge, named after the case wherein such a charge was approved:  *Allen v. United States*, 164 U.S. 492, 501-02 (1896).

[9]Transcript of Excerpt of Jury Trial (Allen charge), Doc. 228, at 2.

[10]*Id.* at 6.

indicated that it was leaning against giving the instruction.[11]   However, the Court noted that since

the written question did not actually say the jury was deadlocked and could not reach a decision,

they should be called in and examined upon that fact.  The Court indicated that if the jury reported

that they believed they were deadlocked, a mistrial would be declared and the jury discharged.

However, if they thought with more time they could produce a unanimous verdict, then they would

be given a modified *Allen* instruction.[12]

The jury was brought into the courtroom and the Court addressed the foreperson, inquiring

"Is this a situation where you think you're not likely to arrive at a unanimous agreement, given more

time, or is this just a situation where you're struggling to arrive at a unanimous agreement but you've

not really despaired of your likelihood of doing so?"[13]   The foreman denied that they were

hopelessly deadlocked, and represented that they were open to coming to an agreement, and when

the Court asked if any juror disagreed with the foreperson's representation, all the jurors shook their

heads "no."[14]   The Court then gave the jury the following charge:

> I realize that you are having some difficulty reaching a unanimous agreement,
> but that's not unusual. Sometimes after further discussion jurors are able to work out
> their differences and agree. This is an important case. If you should fail to agree upon
> a verdict, the case is left open and it may be tried again. Obviously, another trial
> would require the parties to make another large investment of time and effort, and
> there's no reason to believe that the case can be tried again by either side better or
> more exhaustively than it's been tried before you.
> It's your duty as jurors to consult with one another and deliberate with a view
> toward reaching an agreement, if -- and let me add this is important -- if you can do
> so without violence to your individual judgments. Each of you must decide the case

---

[11]*Id*. at 5.

[12]*Id*. at 10-13.

[13]*Id*. at 14.

[14]*Id*. at 14-15.

for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it's erroneous, but do not surrender your honest conviction as to the weight of the evidence solely because of the opinion of your fellow jurors, or merely for the purpose of returning a verdict.

What I've just said is not meant to pressure you into agreeing on a verdict. Take the time you need to discuss things. There's not an urgency or a hurry, but I will ask that you now retire once again and continue your deliberations, with these additional comments in mind, to be applied, of course, in conjunction with all of the instructions that I previously gave you.[15]

The jury deliberated for another approximate 10 hours before rendering its verdict.

Defendant challenges the appropriateness of an *Allen* charge because the case was not complicated, and the jury had already been deliberating for awhile. Defendant argues that such instructions are only appropriate, if ever, when the jury has deliberated for only a short time period. The jury had already been told that they had a duty to deliberate, so Defendant argues this instruction was duplicative. The Defendant also argues that the instruction was non-responsive to the juror's situation because the jury was confused, that they struggled while apparently not understanding the facts or the law, and therefore it would have been appropriate and just to declare a mistrial at the time the jury asked this question.

As to the allegation of jury confusion or of not understanding the case; defendant's brief makes this assertion several times, but it is pure speculation, as would any rebuttal to it also be. So the Court will not address this argument, either here or in other sections of defendant's brief where it is made.

Defendant's brief argues that a mistrial should have been declared upon receipt of this question, and arguments of defense counsel at this point in the trial were similar. Defendant's

---

[15]*Id*. at 15-16.

counsel argued to the Court that if the *Allen* instruction was given and the jury ultimately delivered a verdict, problems would ensue.  Defense counsel clearly inferred that, given the jury's confusion, they should not be permitted to proceed to verdict.  What defense counsel ignores, however, is the jury's unanimous representation to the Court, upon further inquiry into their question, that they were not deadlocked.  In contrast, they affirmatively represented that they believed they could arrive at a verdict.  In the absence of a report that the jury considered itself deadlocked, it would have been inappropriate and clear error to discharge them and declare a mistrial.  The *Allen* charge, although it is to be used cautiously, is the accepted instruction for a jury struggling to reach a decision, and Defendant did not suggest what other response should have been provided to the jury instead of that charge, either at the time, or in its current briefing.

This fact distinguishes the present case from those cited in Defendant's brief.  These facts are the mirror opposite of what occurred in Defendant's cited case of *United States v. McElhiney*[16] where the jury reported itself unable to reach a verdict, where the foreperson stressed to the court that added work would not help the jury reach a verdict, and where polling of the jury demonstrated unanimous agreement of the jurors that they believed they could not reach a verdict.[17]

Courts urge caution in the giving *Allen* type charges, but permit them if they are not coercive when viewed in context and under all of the circumstances.[18]  To be permissible, an *Allen* charge must incorporate an admonition regarding juror's conscientiously held convictions.[19]

---

[16]275 F.3d 928 (10th Cir. 2001).

[17]*Id.* at 934.

[18]*United States v. Arney*, 248 F.3d 984, 987 (10th Cir. 2001); *McElhiney*, 275 F.3d at 940.

[19]*McElhiney*, 275 F.3d at 943-44, *Arney*, 248 F.3d at 988.

The language of the charge given here indicated that the jurors should not reach agreement in violence with their individual convictions.  The Court departed from the language of the written instruction to emphasize the importance of this point, and the charge further instructed the jurors not to surrender their honest convictions merely for the purpose of obtaining a verdict.  This is comparable to the language courts have consistently found to not be coercive.  The lack of coercion is even clearer in context.  Generally, reviewing courts are concerned about a jury being coerced to return a verdict when they've already reported to the trial court that they do not believe they can reach a unanimous verdict.  The concern is that the supplemental charge will force them to a verdict in spite of their representation that unanimity is not possible.  In this case, a supplemental charge could not be deemed coercive in context, given that the jurors all indicated that believed they could reach an agreement.

Furthermore, the supplemental charge apparently was not in fact coercive, when again looked at in context, given that the jury deliberated another ten hours before returning a verdict. Most cases in which the appellate courts have been concerned that coercion existed are where a verdict was returned quickly after the *Allen* charge was given, despite the jury's earlier representation that they could not reach a unanimous verdict.  In this case, if the Court's intention had been to "coerce" the jury into a quick verdict, the supplemental instruction failed to achieve that purpose (of course, that was not the purpose).

Finally, the charge here contained the safeguards of encouraging all jurors, not just those in the minority, to reconsider their positions, and of emphasizing to each juror the importance of their own convictions.

Frequent invocations of the *Allen* charge where the jury insisted it was deadlocked have been affirmed; its use here, where the jury immediately denied being deadlocked, was clearly appropriate. Defendant's motion for a new trial on these grounds is denied.

**B.     The Causation Instruction**

Defendant's objection to the Court's causation instruction must be understood in the context of the case.  Highly summarized, the uncontroverted evidence was that the minor patient had a congenital defect, an Arterial Venous Malformation (AVM), that had hemorrhaged and was causing edema in her spinal cord.  Ultimately, the hemorrhage in the spinal cord caused paralysis.  Plaintiff did not claim that defendant was responsible either for the existence of the AVM, nor for the fact of its hemorrhage.  Plaintiff's claim (again, summarized, for the purposes of this discussion) was instead that when the minor patient first presented to the emergency room with symptoms, the defendant doctor failed to diagnose that the patient was experiencing a neurological event (plaintiff did not claim that the defendant should have diagnosed the existence of, or hemorrhage of, the AVM, which is a rare condition; only that the defendant should have diagnosed the presence of some neurological event).  But for this failure, plaintiff claimed, the minor patient would have been referred to a speciality hospital earlier and received earlier intervention regarding the event, which would have decreased or eliminated her resulting condition.

To simply say, therefore, that the defendant caused plaintiff's paralysis, would be to misstate plaintiff's claim.  Plaintiff agreed that, medically speaking, the paralysis was caused by the hemorrhaging AVM, a congenital defect whose existence and ultimate hemorrhage was no individual's fault, and which was so rare that it was not reasonable to expect an emergency room doctor to diagnosis it.  The malpractice claim against the defendant doctor related to her failure to

7

diagnosis the occurrence of some sort of neurological event.

The first proposed instruction by Defendant did not reflect this claim. To say simply, as Defendant's proposed instruction said, that "[t]he proximate cause of an injury is that cause which in natural and continuous sequence produces the injury and without which the injury would not have occurred"[20] may be, as Defendant asserts, a correct statement of Kansas law, but it was not a statement of law which was relevant to Plaintiff's claim. Plaintiff's concern was that this instruction, standing alone, could lead a jury to conclude that the minor patient's paralysis was caused by a hemorrhaging AVM rather than by the defendant doctor, missing the nature of Plaintiff's claim. Given that claim, this instruction would have caused jury confusion and it would have been error to give it.

Second, defendant proposed a negligence instruction which provided in part: "A physician is at fault when he or she is negligent and that negligence caused or contributed to the event which brought about the injury of damages for which claim is made."[21]

Defendant's brief complains of the causation instruction "crafted" by the Court and actually given, but her brief only quotes that instruction in part. The full instruction given by the Court was as follows:

> Proof of causation is necessary to a finding of fault. A medical care provider is "at fault" when the provider is negligent and that negligence causes or contributes to cause the event which brought about the injury for which the claim is made. A person may be negligent but unless that negligence causes or contributes to cause the injury, the person cannot be "at fault."
> When I say "contributed to cause the injury," I mean that there may be more

---

[20]Doc. 177, p. 7.

[21]Doc. 177, p. 10. The phrase quoted, both here and in Defendant's brief, was only a portion of the instruction proposed by Defendant. The rest of this instruction defined negligence, in terms substantially identical to the instruction actually given in this regard.

than one cause of an injury; that is, there may be concurrent causes which combine to produce an injury. Concurrent causes do not always occur simultaneously.[22]

The first paragraph of this instruction essentially incorporates Defendant's second proposal, so it is not accurate to say that the Court declined to give this instruction.  Instead, the Defendant's complaint is more accurately stated that, in addition to her requested instruction, the Court added the second paragraph.  Defendant protests that the jury should have been instructed on "but-for" causation.  Both parties were clear throughout the trial that both the condition and the hemorrhaging were not the fault of anyone, but that the defendant doctor was being charged with fault for not taking different medical action than she did when presented with the developing condition.  It is unlikely the jury was confused on this point.  To have simply given a "but-for" causation instruction, in contrast, would have likely created jury confusion between the claims and evidence they heard and the instructions they were then given.

Defendant also argues that jury confusion was obvious in this case from the jury's marking on the verdict form.  That form read, at Question 2: "Do you find Defendant's negligence caused or contributed to cause damage to Plaintiff?"  The jury checked the box for yes, but additionally crossed out the word "caused" and drew a box around the word "contributed."[23]  Defendant cites this as evidence that the jury was confused and did not understand that plaintiff had the burden to show that the injury would not have occurred without defendant's negligence.

Although the existence of the word "or" in the instruction implied that either "caused" or "contributed to," but not both, were sufficient for a "yes" answer, and that therefore the jury was not required to indicate which selection they used to arrive at their "yes" verdict, the fact that they made

---

[22]Instruction No. 7, Doc. 221, p. 8.

[23]Jury verdict form, Doc. 222.

this indication is hardly an indication of confusion.  If anything, it indicates that they followed the claims and evidence presented to them in arriving at their verdict.  This additional marking was unnecessary, but harmless.

Defendant's motion for a new trial on these grounds is also denied.

### C.      Improper Closing Argument

Defendant's brief next objects to "improper and inflammatory remarks" during the rebuttal portion of Plaintiff's closing argument.  Defendant acknowledges the absence of a contemporaneous objection to these remarks, but argues that only upon reflecting on all of the improper remarks as a whole did the prejudicial impact become clear.

Defendant's litany of alleged improper arguments are: 1) counsel urged the jury to decide the case on initial impressions and not based on the full evidence; 2) counsel encouraged the jury to disregard the Court's instructions regarding standard of care; 3) counsel twisted the Court's instruction that sympathy not enter into their deliberations by arguing that the defendant doctor was not entitled to sympathy either; and 4) counsel encouraged the jury to abandon their duty of impartiality and act as advocates for the plaintiff.

The Court need not discuss and evaluate these claims in any depth.  Having reviewed each portion of plaintiff's closing argument to which defendant has objected, the Court concludes that none were inappropriate, and that in each case Defendant has tried to infuse the comments with different meaning than they clearly had in context.  Further, the Court finds no reason to believe that the jury disregarded the Court's instructions on any of these points.

Defendant's motion for a new trial on these grounds is denied.

**D.      Verdict Contrary to the Great Weight of the Evidence**

Finally, Defendant seeks a new trial on the grounds that the verdict was contrary to the great weight of the evidence.  In support of this position, the Defendant not only makes a review of the evidence and arguments from trial, but reprises its "juror confusion" argument from the verdict form.

Counsel for both parties did an outstanding job of marshaling and presenting evidence at trial in this case.  Both sides presented numerous experts to the jury.  The Court is hard pressed to think of an expert whose testimony failed to be impressive.  The jury was presented with a dispute in which strong, competent arguments and evidence were offered for each side.  The jury made it's decision, as is its right and obligation.  An exhaustive analysis re-weighing the arguments and evidence from trial is not needed.  Ample evidence supported the jury's verdict.  Furthermore, there is no basis for Defendant's suggestions that the jury misunderstood or misapplied the evidence.

Defendant's motion for a new trial on these grounds is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for a New Trial (Doc. 235) is hereby denied.

**IT IS SO ORDERED.**

Dated this 13th day of May, 2009, in Wichita, Kansas.


 /s/ Eric F. Melgren_____
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

11